UNITED STATES *v.* N. SHURE Co. (No. 3658)[1]

United States Court of Customs and Patent Appeals, December 4, 1933

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[1] T.D. 46818.

[Oral argument October 9, 1933, by Mr. Folks and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain cloisonné ware was imported and two entries thereof made at the port of Chicago. This consisted of certain vases, lily bowls, and water-nut jars. The collector classified certain of the imported vases and bowls under paragraph 397 of the Tariff Act of 1930, as articles or wares plated with gold, at 65 per centum ad valorem, and classified a part of the articles designated by the collector as "gold-plated metal jars," as "hollow or flat ware, not specially provided for," plated with gold, at 65 per centum ad valorem, under paragraph 339 of said act.

In its protest covering entry No. 1498, the importer claimed the goods to be dutiable at only 45 per centum ad valorem, under paragraph 397 of said act, as articles or wares composed of base metal, but not plated with gold. An alternative claim was that the goods were dutiable at 40 per centum under paragraph 339 of said act, as articles composed of base metal, not plated with gold. There was also another alternative claim under said paragraph 339, as articles composed of iron or steel and enameled, at 30 per centum ad valorem and 5 cents per pound.

In its protest covering entry No. 1499, claims were made under the same paragraphs, omitting, however, the last-named claim under said paragraph 339.

The United States Customs Court sustained the protests under said paragraph 397, and overruled them in all other respects. From the resulting judgment the Government has appealed, claiming error in said judgment under said paragraph.

On the trial in the court below, two witnesses were called by the protestant, and samples of the goods in question were offered. A description of one of them, Exhibit 1, will be sufficient for the purposes of this case. This exhibit is a vase about 9 inches in height, made of cloisonné, in chief value of copper. Upon the exterior surface of this vase, in the ordinary cloisonné method, a network of wires is laid, and afterwards filled with enamel. Around the mouth of the vase is a lip, or band, about five-eighths inch in width, which is covered with what has the appearance of gold plating. This extends over and down into the mouth of the vase for about 1½ inches. Around the bottom of the vase is a similar rim about one-fourth inch in width, which is likewise covered by a similar plating, which plating extends over the edge of the rim and completely over the bottom of the vase, which is approximately 2½ inches in diameter. The other exhibits have varying amounts of a similar plating, and although in some vases

the amount of plating is somewhat smaller, we believe Exhibit 1 may be taken as fairly typical of all.

Paragraphs 339 and 397 are as follows:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: Plated with platinum or gold, 65 per centum ad valorem; plated with silver, 50 per centum ad valorem; composed of iron or steel and enameled or glazed with vitreous glasses, 5 cents per pound and 30 per centum ad valorem; composed wholly or in chief value of aluminum, 8½ cents per pound and 40 per centum ad valorem; composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The issue arose in the consideration of the question as to whether the articles might be said to be gold-plated. There is no issue here as to whether they are, or are not, colored with gold lacquer, as provided for in said paragraph 397, nor is there any issue as to whether they are, or are not, household utensils or hollow or flat ware, and for those reasons, those questions are not considered. The only question is, as has been stated, whether they are gold-plated.

Two witnesses were called to testify by the importer—A. J. Rinkenberger, manager of the import department of the appellant, and James B. Child, one of the examiners at the port of Chicago.

The following is all the testimony which appears in the record on the point made by the appellant that the imported articles are not gold plated. The witness Rinkenberger testified:

Q. So that your real claim or contention is that they are not gold-plated?—A. That is the contention, that they are not.

Q. That they are not    Do you know as to the method used in preparing these, making them?—A. Not from personal observation, only as told me.

Q. What do you term them, what kind of ware is it?—A. It is known as a commercial grade of cloisonné ware.

    \*        \*        \*        \*        \*        \*

X Q. What kind of plating is in these samples, Mr. Rinkenberger?—A. It is what is known by us as a gold wash.

X Q. Well, don't you sell them as——. A. (Continuing.)  Only on the—the gold wash is on the exposed metal flange at the top and bottom and 2 inches down in the mouth of the vase.

X Q. (Continuing.)  Well, you don't sell them as gold wash?—A. No; we sell them as cloisonnés only; it is sold as cloisonné ware.

X Q. Don't you refer to them when selling as gold-plated?—A. No, sir; they are never referred to as being gold-plated.

X Q. Cloisonné has different kinds of plating, hasn't it?—A. Not this kind of ware that we buy.

X Q. Well, they have different kinds of plating?—A. This is the only kind that we have ever handled. This is the cheapest grade of cloisonné ware that is made.

## The witness Child testified:

Q. Did you find as the result of your test that the amount of gold contained in the articles like the exhibits 1 to 4 was or not what you might say infinitesimal?

    \*       \*       \*       \*       \*       \*       \*

A. The examination and test showed that gold existed in each of the articles tested to such an extent that it could be determined.

Q. I am asking you to what extent did you find it to be present. Was it quite small?—A. Yes, quite a small quantity.

Q. Would you say that it was less than one fourth of 1 percent?—A. The quantity?

Q. Yes.—A. As to the whole article?

Q. Yes.—A. Much less than that.

Q. Much less. And where, if at all, was the gold present, according to what you ascertained, in what part or portion of the pieces? Say that you take exhibit no. 4.—A. On exhibit no. 4 the outside ring aroung the top, the top surface of the open part of the neck, and on the inner portion of the open surface of the neck to an extent of about 1¼ inches, and the outer ring around the bottom of the jar, and the ring constituting the bottom surface of the jar, and the surface of the inset portion of the bottom of the jar, all contained gold.

Q. To the extent that you have mentioned?—A. Well, in a quantity of less than one-fourth of 1 percent by weight.

Q. You are familiar with the term "gold wash," Mr. Child?—A. Fairly so.

Q. Are the portions around the neck and at the bottom what you would term as gold wash?—A. It is what we commercially know as flash plating.

Q. Is that synonymous with gold wash?

    \*       \*       \*       \*       \*       \*       \*

A. It is a commercial term, I would say, whether it is so or not.

Q. Well, according to your experience as an examiner you have heard the term "gold wash"? Would that be a term that is applicable to the top and bottom of these articles?

    \*       \*       \*       \*       \*       \*       \*

A. It is practically the same thing as the gold wash.

    \*       \*       \*       \*       \*       \*       \*

Judge SULLIVAN. And the portions that you have enumerated as gold something are just on the top and on the bottom?

The WITNESS. These yellow exposed surfaces.

Judge SULLIVAN. How about the remaining exhibits, exhibits 1, 2, and 3?

The WITNESS. The same applies there—the exposed yellow parts are gold-plated parts; the balance is enamel; and the base of it is copper—that is, the enamel is on copper, and the gold plating is on copper.

Judge SULLIVAN. The gold plating on the remaining exhibits would be the percentage as in exhibit 4?

The WITNESS. Yes, sir.

    \*       \*       \*       \*       \*       \*       \*

Re D. Q. Mr. Child, gold plating, as you understand the term, generally contains a greater percentage of gold than what is usually contained in a gold wash, does it not?—A. I have never understood it that way.

Re D. Q. In other words, you make no distinction between an article that is gold wash and that is gold plated?

\*      \*      \*      \*      \*      \*      \*

A. Not as to classification.

\*      \*      \*      \*      \*      \*      \*

Judge SULLIVAN. Was that gold wash a gold plate?—A. A gold wash is what we would call a light gold plating.  The difference is in the weight of the plating, and a wash is a plating that is very light.

Re D. Q. Well, now, would you say, from the result of your test, that the quantity of gold which you found in any of these articles was or not infinitesimal?

\*      \*      \*      \*      \*      \*      \*

A. It is very, very light.

Re D. Q. I see.  Well, can you explain that a little more in detail?  Just what do you mean by "very, very light," Mr. Child?—A . Yes, surely I can explain it.  It is so light that you have to take a microscope to find it.

\*      \*      \*   .   \*      \*      \*      \*

Re X Q. Did you have to take a microscope to find the gold plating on these articles, Mr. Child?—A. I certainly did.  I couldn't determine it with the naked eye.

The trial court, quoting *Saji & Kariya Co.* v. *United States*, 9 Ct. Cust. Appls. 78, T.D. 37945, was of opinion that, because of the small amount of gold contained in the gold plating on the imported articles, the articles should not be classified as gold-plated.

The case cited by the trial court, and relied upon here, involved an importation of vases of cloisonné ware similar to those here involved, and the question there was whether those articles might be considered as plated with gold.  It was contended by the importer in that case that only a very small proportion of the surface of the imported articles was covered with such a plating, and that this plating was, therefore, an insignificant or negligible element in their construction, and not a substantial one, and that, therefore, the articles should not be considered as gold-plated.  This court, speaking through Martin, Judge, considered that question carefully, and came to this conclusion:

\* \* \* It is not necessary that an article be wholly covered with gold or silver plating in order to bring it within the classification of plated articles under the provision now in question, nor can any hard and fast mathematical line of distinction be drawn in the application of the provision.  The classification includes all such metallic articles as have a substantial portion of their surface, that is to say, more than an insignificant or negligible portion, covered by a plating of gold or silver.

It will be noted, from a consideration of the case cited, that no consideration was given there to the question here involved, namely, how much gold must a plating contain in order to be gold plating. It will be observed the statute which we have here under consideration, and under which the imported articles were classified, provides that if the articles or wares imported are plated with gold, they shall be dutiable under said paragraph 397.  It is sufficient, for the purposes of that statute, if the plating is a gold plating.  It may be thin, or it

may be heavy.   If it is a gold plating, that is all that the law requires. No evidence has been offered here to substantiate the claim that these articles are not gold-plated.   On the contrary, the collector's classification creates the presumption, and all the evidence is to the effect, that they are gold-plated; that is, on a substantial portion of their surfaces.   This is sufficient to meet the demands of the statute. If the legislative body had desired to define what amount of gold should be required to constitute such a plating, we have no doubt it would have done so.   Having failed to do this, the only inquiry is, Is it a gold plating?

The appellee argues, and this argument evidently impressed the trial court, that because it was necessary to use a microscope to detect the gold in the plating, it ought not to be considered a gold plating.   However, this would also be true, so far as we are advised, of any plating which resembled gold in its color and appearance. No evidence is produced to indicate what amount of gold ordinarily is contained in gold plating.   So far as this record advises us, the light, or thin, gold plating used on these articles may be in general commercial use.   Therefore, for the reasons above stated, we are of the opinion that the court below erred upon this record in finding that the importer had overcome the presumption of correctness attaching to the collector's classification, and in finding that the imported articles were not gold-plated, and its judgment is *reversed*.

GARRETT, Judge, dissents.

### CONCURRING OPINION

LENROOT, J., specially concurring:

I concur in the conclusion reached by the majority solely upon the ground that it does not appear that the plated parts of the articles in question were not in fact plated with a material of which the predominant part was gold.

The testimony is confusing upon this point, and it is not clear to me upon what ground the majority bases its conclusion.   In the majority opinion, after quoting from the case of *Saji & Kariya Co.* v. *United States*, 9 Ct. Cust. Appls. 78, T. D. 37945, it is stated:

It will be noted, from a consideration of the case cited, that no consideration was given there to the question here involved, namely, how much gold must a plating contain in order to be gold plating.   * * *

If the testimony could be properly construed as establishing that the plating material upon the articles in question contained less than one fourth of 1 per centum gold, I should be compelled to dissent from the conclusion reached by the majority, for in that event I do not see how the articles could be held to be gold-plated.   To illustrate, if the plating material contained 99¾ per centum brass and one fourth of 1 per centum gold, could it be held that the articles were gold-plated?

However, as I construe the testimony, it is to the effect that the amount of gold in the plating on the articles in question is less than one fourth of 1 per centum of the total weight of the articles. In view of the comparatively small area of the articles plated, it is conceivable that the amount of gold in the plating could be the predominant ingredient of the plating material.